**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATHAN RILEY, ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 14-547 |
| ) | Judge Nora Barry Fischer/ |
| vs. ) | Chief Magistrate Judge Maureen P. Kelly |
| ) | |
| ABUBAKAR MUHAMMAD; REV. ) | |
| ALEDA MENCHYK *Former FCPD*; ) | |
| Food Service Manager WALLACE ) | |
| DITTSWORTH *CFSM2*; MICHAEL ) | |
| DECARLO *CFSM1*; LOUIS S. FOLINO ) | |
| *Warden;* JOHN/JANE DOES *Director of* ) | |
| *Bureau of Health Care Services Clinical* ) | |
| *Dietician*; JEFF ROGERS *CCPM*; ) | |
| ULRICH KLEMM; JOHN/JANE DOES ) | |
| *Religious Leaders at Central Office*; MARK ) | |
| CAPOZZA *former Deputy Superintendent* ) | |
| *Centralize Services*; JABULANI ) | |
| SIBANDA; DORIINA VARNER *Chief* ) | |
| *Grievance Officer*; MICHAEL SMITH ) | |
| *Correctional Activity Manager II*; COL. ) | |
| HARKLEROAD *CO1*; DEMASKE; ) | |
| LATTERMORE; HNYLANSKI; RANDY ) | |
| SEARS, ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is recommended that the Complaint be dismissed pre service pursuant to the Prison

Litigation Reform Act ("PLRA") for failure to state a claim upon which relief can be granted

and/or for repetitiousness.

## II. REPORT

Nathan Riley ("Plaintiff") is currently serving multiple sentences for multiple convictions.[1] "On May 22, 1995, following a jury trial in the Court of Common Pleas of Philadelphia County, Riley was convicted of first-degree murder, robbery, aggravated assault, and related charges. On November 16, 1995, he was sentenced to life imprisonment for murder and consecutive sentences of four-to-eight years for robbery and two-to-four years for aggravated assault." Riley v. Palakovich, No. 2:05-cv-4541 (E.D. Pa. ECF No. 28 at 1). He has been continuously incarcerated since 1995.

During his time of incarceration, Plaintiff has filed numerous lawsuits in the federal courts, with the present case being just one recent example of his unending serial litigation. In the last year, Plaintiff also filed another civil action on January 23, 2015,[2] i.e., Riley v. Gilmore, No. 2:15-cv-351 (E.D. Pa. Petition for Writ of Habeas Corpus) and, more recently, Riley v. Collins, No. 15-cv-1087 (W.D. Pa. filed on 8/9/2015). Given his unending filing of civil actions since August 26, 2005, it does not come as a surprise that Plaintiff has fallen into the trap of repetitive litigation. See, e.g., Riley v. DeCarlo, No. 11–537, 2012 WL 4378569 at *9 (W.D. Pa. Sept. 25, 2012) (finding Plaintiff's claims concerning unsanitary trays barred by res judicata holding that "Given the existence of a final order dismissing Plaintiff's prior complaint for failing

_____

[1] The Court takes judicial notice of Plaintiff's criminal convictions, available at:

https://ujsportal.pacourts.us/docketsheets/CourtSummaryReport.ashx?docketNumber=CP-51-CR-1001441-1994

(site last visited 11/12/2015).

[2] Between August 26, 2005 and January 23, 2015, Plaintiff has filed at least 17 civil actions in the federal district courts located within Pennsylvania. Between April 30, 2007 and June 23, 2014, Plaintiff has filed at least 10 appeals or original actions in the United States Court of Appeals for the Third Circuit.

to state a claim, the instant suit is barred by res judicata. Accordingly, summary judgment is granted to Defendants. Furthermore, even if res judicata did not apply, this claim clearly is duplicative of the one raised in the earlier civil action. As such, and in the alternative, it is appropriate to dismiss it, *sua sponte*, as frivolous and malicious."); Blount and Riley v. Folino, Civ. A. No. 10–697, 2011 WL 2489894, at *14 (W.D. Pa. 2011) ("it clearly was Riley's choice, as inexplicable as it may be, to file and maintain two lawsuits, based on the same facts, against the same Defendants. Consequently, the claims raised against Defendants Grainey, Workman, Walker, Lindley, and Macknair are repetitious, and therefore frivolous."); Id. at *17, n.12 ("Riley makes these allegations as well. However, these allegations are duplicative of allegations made in *Riley v. Beard*, No. 08–1675 (W.D. Pa. filed Dec. 10, 2008). Thus, they will be dismissed with respect to Riley as legally frivolous.").

Given Plaintiff's extensive litigation history, it should come as no surprise that some of his present claims are also barred by res judicata and/or collateral estoppel and/or are dismissible as being repetitious and frivolous. The remaining claims not barred by these doctrines fail to state a claim on other grounds as explained below. For the reasons set forth herein, Plaintiff's claims fail to state a claim, the Complaint should be dismissed pre-service pursuant to the PLRA.

**A.  STANDARD OF REVIEW**

Because Plaintiff is a prisoner who has been granted IFP status and/or because Plaintiff sues government employees, and/or because Plaintiff sues concerning prison conditions the screening provisions of the PLRA apply.  See 28 U.S.C. § 1915(e) ("[n]otwithstanding any filing fee, or any portion thereof, that may have been paid [by a prisoner granted IFP status], the court shall dismiss the case at any time if the court determines that –  (A) the allegation of poverty is untrue;  or  (B) the action or appeal – (i) is frivolous or malicious;  (ii) fails to state a claim on

which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."); 28 U.S.C. § 1915A ("[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."). <u>See also</u> 42 U.S.C. § 1997e.

In performing the Court's mandated function of sua sponte review of complaints under 28 U.S.C. §§ 1915(e) and 1915A, to determine if they fail to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). <u>See</u>, <u>e.g.</u>, <u>Brodzki v. Tribune Co.</u>, 481 F. App'x 705 (3d Cir. 2012) (applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)); <u>Courteau v. United States</u>, 287 F. App'x 159, 162 (3d Cir. 2008) ("the legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions."); <u>Montanez v. Pa. Health Care Service Staffs</u>, Civ. A. No. 09-1547, 2011 WL 7417026, at *2 (W.D. Pa. Dec. 14, 2011), *report adopted by*, 2012 WL 602938 (W.D. Pa. Nov. 23, 2012).

As the United States Supreme Court explained in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570 (rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). Under this standard, the court must, as a general rule, accept as true all factual allegations of the complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. <u>Angelastro v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985). In addition to the complaint, courts may consider matters of public record and other

matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). Moreover, under the 12(b)(6) standard, a "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by, 275 F.3d 1187 (9th Cir. 2001). The court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

### B. PLAINTIFF'S COMPLAINT

Plaintiff makes seven claims for relief in his Complaint:

1) Defendants Muhammad, Menchyk, Dittsworth, DeCarlo, Folino, John/Jane Do, Klemm, Rogers, Capozza, Varner, and Sibanda deprived Plaintiff of adequate nutrition during Ramadan of 2010, 2011, 2012 and violated Plaintiffs First Amendment rights, RLUIPA rights, and Equal Protection rights in addition to having violated his right to be free of cruel and unusual punishment and denial of due process of law. ECF No. 33 ¶¶ 124-26.

2) Defendants Muhammad, Sibanda, Rogers, Smith and Capozza deprived Plaintiff of Halal [i.e., the Islamic analogue to Kosher food in the Jewish religion] meat during the feast of Eid al-Fitr, and Eid al-Adha and these failures violated Plaintiff's First Amendment free exercise rights, and RLUIPA rights. In addition the actions of these Defendants along with the actions of Dittsworth, Folino, and Varner in failing to curb the practice of purchasing non-Halal meats violated Plaintiff's First Amendment Rights and RLUIPA. Id. ¶¶ 127 to 129.

3) Defendant Harkelrod's not permitting Plaintiff to wear his pants above Plaintiff's ankle bone as required by Plaintiff's religious practice violated Plaintiff's rights under RLUIPA and First Amendment rights to free exercise. Id. ¶ 130. Defendant Folino's policy of not permitting Muslim inmates to wear their pants above the ankles without providing notice and an opportunity to object

violates RLUIPA, Plaintiff's First Amendment rights and denied due process and equal protection. Id. ¶¶ 132 – 133.

4) Defendant Harkelrod retaliated against Plaintiff with threats of a written misconduct and placement in the RHU. Id. ¶ 131.

5) The actions of Defendants Klemm John/Jane Does, Muhammad, Sibonda, Rogers, Smith, Capozza and Folino in implementing and enforcing the policy of beginning and ending Ramadan based on an Islamic Calendar's estimate date without first observing the physical sighting of the Hilaal [i.e, the crescent moon] and prohibiting Plaintiff from observing a physical sighting of the Hilaal to begin and end Ramadan violated Plaintiffs rights under RLUIPA, and First Amendment Rights. Id. ¶¶ 134 -135.

6) Plaintiff complains that the actions of Defendants Hnylanski and Sears in refusing to renew the contract with Thompson-West for print updates of Advance Sheets, and instead to rely on Lexis computer updates violates the Due Process Clause, Equal Protection, right to petition the courts under the First Amendment. Id. ¶ 137.

7) Plaintiff complains that the actions of DeMaske and Lattermore in implementing and enforcing the policy of requiring Plaintiff to seek permission from the guards to speak before speaking violates Plaintiff's rights to free speech under the First Amendment. Id. ¶ 137. And they retaliated against Plaintiff by entering false entries on Plaintiff's quarters cards and recommended that Plaintiff be removed from his employment for Plaintiff's exercise of free speech.

By way of relief, Plaintiff seeks injunctive relief and monetary damages.


## C. DISCUSSION

The operative Complaint alleges Defendants Muhammad, Menchyk, Dittwsorth, DeCarlo, Folino, John/Jane Doe, Klemm, Rogers, Capozza, Varner, John/Jane Does and Sibanda deprived Plaintiff of adequate nutrition during Ramadan of 2010, 2011, and 2012 and that this violated his First Amendment Rights to Free Exercise, and his Equal Protection Rights, and his Rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Plaintiff also complains that this denial of allegedly adequate calories deprived him of his Eighth Amendment rights.

Plaintiff complains that "Defendants Muhammad, Menchyk, Dittsworth, DeCarlo, Folino, John/Jane Doe, Klemm, Rogers, Capozza, Varner, John/Jane Does, Sibanda, supplied Plaintiff inadequate nutrition and calories during Ramadhan 2010, 2011, and 2012." ECF No. 1 ¶ 25.

### 1. The Nutrition Claims for 2010 and 2011 are Barred by the Doctrine of Res Judicata.

Plaintiff's claims regarding inadequate nutrition during the months of Ramadan of 2010, and 2011 were previously litigated in the case of <u>Riley v. DeCarlo</u>, No. 11-537 (W.D. Pa. filed 4/26/2011) (the "First Case") wherein he alleged that "beginning in May 2007 to present," i.e., April 21, 2011, he was "deprived of one-half to two-thirds of the nutrition and calories that the Pennsylvania Department of Corrections mandates. (3) Plaintiff has been provided approximately 1000 calories per day as opposed to the 2800 calories that general population prisoners are to be provided according to Pennsylvania Department of Corrections policy. . . . . defendant DeCarlo know of these conditions and disregarded a substantial risk of serious harm to Plaintiff and other prisoners heath. [sic] (7) these practices hinder Plaintiff's ability to maintain an adequate weight count and have caused an immediate and substantial risk to Plaintiff's health. (8) Defendants DeCarlo, Folino, and Varner, failed to rectify these deficiencies and ensure appropriate and nutritionally adequate calorie diet practices." <u>Id</u>. ECF No. 1 ¶¶ 2-3; 6 – 8. Accordingly, these claims are barred by res judicata or claim preclusion.[3]

The doctrine of res judicata provides that a final judgment rendered by a court of competent jurisdiction, on the merits, is conclusive as to the rights of the parties, and constitutes an absolute bar to a subsequent action involving the same cause of action. <u>In re Weisbrod & Hess</u>

---

[3] <u>See</u>, <u>e.g.</u>, <u>Baker v. Potter</u>, 175 F. App'x 759, 761 (7th Cir. 2006)("Baker's claim for breach of the settlement agreement is barred by claim preclusion, also called res judicata").

Corp., 129 F.2d 114 (3d Cir. 1942). As explained by the United States Court of Appeals for the

Third Circuit, the federal law[4] of res judicata or claim preclusion involves a three pronged test,

and bars a second suit where "there has been (1) a final judgment on the merits in a prior suit

involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause

of action." Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991). The "purpose of

[the res judicata] doctrine is to relieve the parties of the cost and vexation of multiple lawsuits,

conserve judicial resources, prevent inconsistent decisions, and encourage reliance on

adjudications." Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 551 (3d Cir.

2006). In light of the purposes which res judicata serves, the doctrine not only bars relitigation

in a second suit of what was actually litigated in the first suit but res judicata also bars

relitigation of what could have been litigated in the first suit. See, e.g., Smith v. Morgan, 75 F.

App'x 505, 506 (6th Cir. 2003) ("Under claim preclusion, a final judgment on the merits bars any

and all claims by the parties or their privies based on the same cause of action, as to every matter

actually litigated as well as every theory of recovery that could have been presented."); L-Tec

---

[4] The federal common law doctrine of claim preclusion is to be distinguished from the various
states' laws of claim preclusion. Federal courts are sometimes called upon to give preclusive
effect to prior state court judgments. The governing law in such cases is the state law of claim
preclusion from the state of the prior state court judgment. See 28 U.S.C. § 1738 (full faith &
credit statute); Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380
(1985) ("This statute [i.e., Section 1738] directs a federal court to refer to the preclusion law of
the State in which judgment was rendered. 'It has long been established that § 1738 does not
allow federal courts to employ their own rules of res judicata in determining the effect of state
judgments. Rather, it goes beyond the common law and commands a federal court to accept the
rules chosen by the State from which the judgment is taken.'"); Hillary v. Trans World Airlines,
Inc., 123 F.3d 1041, 1043 (8th Cir. 1997) ("it is fundamental that the res judicata effect of the
first forum's judgment is governed by the first forum's law, not by the law of the second
forum.'"). In contrast, federal courts are sometimes called upon to give preclusive effect to prior
federal court judgments. The governing law in such cases is the federal common law of claim
preclusion. Ross ex rel. Ross v. Board of Educ. of Tp. High School Dist. 211, 486 F.3d 279, 283
(7th Cir. 2007) ("The federal law of claim preclusion applies here because the earlier judgment
was rendered by a federal court."). Because Plaintiff's First Case was filed in federal court, the
federal common law of claim preclusion applies herein.

Electronics Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 87-88 (2d Cir. 1999) (*per curiam*) ("The doctrine of res judicata, or claim preclusion, prevents a plaintiff from relitigating claims that were or could have been raised in a prior action against the same defendant where that action has reached a final judgment on the merits.").

### (a) Final judgment on the merits.

In considering whether res judicata bars the instant suit, we find that the first prong of "final judgment on the merits" is met. The Court granted summary judgment in the First Case, finding with respect to Plaintiff's claims about inadequate food, "Plaintiff's allegations of having spent a protracted period of time on a semi-starvation diet simply are unbelievable given his healthy weight. . . . This utterly undermines any argument that Plaintiff was receiving inadequate nutrition. . . . . Accordingly, Defendants will be granted summary judgment on this claim." Riley v. DeCarlo, No. 11-cv-537 (ECF No. 73 at 15). The Court went on to either dismiss for failure to state a claim or grant summary judgment as to all of Plaintiff's claims. The dismissal of claims for failure to state a claim upon which relief can be granted and/or the entry of summary judgment constitutes a "final judgment on the merits." See, e.g., Sims v. Viacom, 544 F. App'x 99, 101 (3d Cir. 2013) (noting that an order dismissing a case for failure to state a claim is a final judgment as is a grant of summary judgment); Courteau v. United States, 297 F. App'x 159 (3d Cir. 2008) (finding that the District Court's dismissal of a claim for failure to state a claim upon which relief can be granted pursuant to the Prison Litigation Reform Act's screening provisions constituted a final judgment for res judicata purposes).

### (b) Same parties.

We find the second prong of the test for res judicata to be met as well, given that we find the defendants in the First Case and the present case to constitute the "same parties or their

privies." Hence, the second prong is met. The Defendants in the First Case were: Michael DeCarlo, Wallace Dittsworth, Jeff Rogers, Louis Folino, Rev. Aleda Menchyk, Nedro Grego, J. Niehenke, FNU Cumberledge, Steve Blaze, Dorina Varner, and Jeffrey Beard. The Defendants in the present case are: Abubakar Muhammad, Rev. Aleda Menchyk, Food Service Manager Wallace Dittsworth, Michael DeCarlo, Louis Folino, Jonh/Jane Does Director of Bureau of Healthcare Services Clinical Dietitian, Jeff Rogers, Ulrich Klemm, John/Jane Does Religious Leaders at Central Office, Mark Capozza, Jabulani Sibanda, Dorina Varner, Michael Smith, CO1 Harkleroad, Demaske, Lattermore, Hnylanski, and Randy Sears. Clearly, the parties in this action are the same or similar parties to the First Case.

### (c) Subsequent suit based on same cause of action.

Lastly, we turn to the third prong, requiring that the instant action be based on the same cause of action as the earlier action. In this action, Plaintiff complains about being denied adequate nutrition during Ramadan of 2010, 2011 and 2012. In the First Case, Plaintiff complained of being denied adequate nutrition. Specifically, he complained that "beginning in May 2007 to present[,]" he was "deprived of one-half to two-thirds of the nutrition and calories that the Pennsylvania Department of Corrections mandates. (3) Plaintiff has been provided approximately 1000 calories per day as opposed to the 2800 calories that general population prisoners are to be provided according to Pennsylvania Department of Corrections policy. . . . . defendant DeCarlo know of these conditions and disregarded a substantial risk of serious harm to Plaintiff and other prisoners heath. [sic] (7) these practices hinder Plaintiff's ability to maintain an adequate weight count and have caused an immediate and substantial risk to Plaintiff's health. (8) Defendants DeCarlo, Folino, and Varner, failed to rectify these deficiencies and ensure appropriate and nutritionally adequate calorie diet practices." Riley v. DeCarlo, No. 11-537

(W.D. Pa. ECF No. 1 ¶¶ 2-3; 6 – 8). We find that all of Plaintiff's claims concerning either adequate nutrition during Ramadan of 2010 and 2011 could have been brought in the First Case and were necessarily a subset of the claims made in the First Case. Accordingly, we find the claims contained in the present case barred by res judicata.

The United States Court of Appeals for the Third Circuit has explained the third prong of res judicata analysis as follows:

> In *Athlone*, we noted that the term "'cause of action' cannot be precisely defined, nor can a simple test be cited for use in determining what constitutes a cause of action for res judicata purposes." *Id. (quoting Donegal Steel Foundry Co. v. Accurate Prods. Co.*, 516 F.2d 583, 588 n. 10 (3d Cir. 1975)). Rather, we look toward the "essential similarity of the underlying events giving rise to the various legal claims." *Davis v. United States Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982) (*in banc*), *cert. denied*, 460 U.S. 1014 . . . This principle is "in keeping with '[t]he present trend . . . in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.'" *Athlone*, 746 F.2d at 984 (*quoting* 1B J. Moore & J. Wicker, Moore's Federal Practice ¶ 0.410[1], at 359 (2d ed. 1983)).
>     In conducting this inquiry, we focus upon "whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same." *Athlone*, 746 F.2d at 984. A mere difference in the theory of recovery is not dispositive. *Id*. Thus, the fact that Lubrizol relies on a new theory of "reformation" will not prevent preclusion. In both suits the acts complained of, the material facts alleged, and the witnesses and documentation required to prove the allegations are all the same.

Lubrizol Corp. v. Exxon Corp., 929 F.2d at 963.

We find that factual bases for the two suits are substantially the same, the two suits implicate the same cause of action. See, e.g., id.; Berlitz Sch. of Languages of Am., Inc. v. Everest House, 619 F.2d 211, 215 (2d Cir. 1980)("Whatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of res judicata."); Harborside Refrigerated Services, Inc. v. Vogel, 959 F.2d 368, 372 (2d Cir. 1992)("Res judicata thus not only bars parties from relitigating the

same cause of action, but also 'prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised.'")(*quoting* <u>Murphy v. Gallagher</u>, 761 F.2d 878, 879 (2d Cir. 1985)); <u>McClain v. Apodaca</u>, 793 F.2d 1031, 1034 (9th Cir. 1986)(a plaintiff "cannot avoid the bar of res judicata merely by alleging conduct by the defendant not alleged in the prior action or by pleading a new legal theory."). Hence, not only are the claims regarding adequate nutrition barred but Plaintiff's religious claims based on the allegedly inadequate nutrition are likewise barred by res judicata. Accordingly, all of Plaintiff's claims concerning Ramadan of 2010 and 2011 as contained in Paragraphs 124 – 126 of the instant Complaint are dismissed for failure to state a claim upon which relief can be granted.

As for Plaintiff's claims regarding Ramadan of 2012 and being denied adequate nutrition, we find that they are substantially repetitive of the claims Plaintiff brought in the First Case and should be dismissed as frivolous/malicious. The rule is that "[r]epetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." <u>McWilliams v. Colorado</u>, 121 F.3d 573, 574 (10th Cir. 1997) (quotation marks and alteration omitted).

### 2. The Claim Regarding Rolled up Leg Pants Fails to State a Claim.

Next, we address Plaintiff's claims regarding his leg pants being too long, allegedly in violation of his religious beliefs. Plaintiff complains that Defendant Harkelrod's not permitting Plaintiff to wear his pants above Plaintiff's ankle bone as required by Plaintiff's religious practice violated Plaintiff's rights under RLUIPA and First Amendment rights to free exercise. ECF No. 1 ¶ 130. Plaintiff further complains that Defendant Folino's policy of not permitting Muslim inmates to wear their pants above the ankles without Folino having provided notice to

the inmates and an opportunity to object prior to enacting the policy violates RLUIPA, Plaintiff's First Amendment rights and denied him due process and equal protection. Id. ¶ 132 – 133.

### a. Defendant Harkelrod's enforcement of the policy.

As to Defendant Harkelrod's enforcement of the DOC policy of not permitting prisoners to roll up their pants legs because of the potential safety risk of concealing items in the rolled up portion of the pants leg, which self-evidently serves a legitimate penological interest, and because Plaintiff has the alternative of requesting to have his pants legs hemmed (instead of rolled up) to above the ankle, Plaintiff had a reasonable alternative to exercise his religious practice/beliefs. Accordingly, Plaintiff fails to state a claim as a matter of law because the regulation prohibiting the rolling up of pants legs clearly bears a rational relationship to a legitimate penological interest of safety and because, given the existence of the alternative request for a religious exemption, ECF No. 1-1 at 59, permitting an exemption for religious observance, Plaintiff cannot carry his burden to show a substantial burden upon his religious practice under RLUIPA. See Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007) (defining "substantial burden" on religion for RLUIPA purposes as, inter alia, "substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs"). The United States Court of Appeals for the Third Circuit has defined substantial burden to mean that "a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." Id.

To the extent Plaintiff complains of threats from Defendant Harkelrod for not obeying the rules regarding not rolling up one's pants legs, mere verbal threats are not sufficient to state a cause of action for retaliation.[5] Even if mere verbal threats were sufficient, threatening or warning a prisoner that failure to obey rules may result in the receipt of a misconduct is not an adverse action where Plaintiff admits to being in violation of the rule but merely contends that the rule violates his religious rights.[6]

Accordingly, Paragraphs 130 to 131 of the Complaint are dismissed for failure to state a claim upon which relief can be granted.

---

[5] O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987)("alleged verbal threats and abuse by jail officials at the hospital did not rise to the level of a constitutional violation."); Ayala v. Terhune, 195 F. App'x 87, 92 (3d Cir. 2006) ("Furthermore, Ayala's allegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); Pride v. Holden, 1 F.3d 1244 (Table, text available in Westlaw), 1993 WL 299328, at *2 (7th Cir. 1993) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983."); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) ("Verbal threats are not constitutional violations cognizable under § 1983"); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992) (noting that among the actions "necessarily excluded from the cruel and unusual punishment inquiry ... are verbal threats and harassment."); Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (holding that verbal threats and harassment do not state an Eighth Amendment claim), *amended by*, 135 F.3d 1318 (9th Cir. 1998); Williams v. Gobles, 211 F.3d 1271 (Table), 2000 WL 571936, at *1 (6th Cir. 2000)("Williams's claim against Defendant Gobles fails to state an Eighth Amendment claim because neither verbal harassment nor threats constitute punishment within the context of the Eighth Amendment. Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude.")(some citations omitted).

[6] See Vercheres v. Wilkinson, 194 F.3d 1315 (6th Cir. 1999)(Table, Text in Westlaw)("Thus, Vercheres's retaliation claim was properly dismissed, as the finding that he was guilty of stalking satisfied the defendants' burden of showing that the guard would have charged him with a violation, even if Vercheres had not filed a grievance."); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir.); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (being found guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim.").

## b. Defendant Folino's implementation of the policy.

Plaintiff also complains that Defendant Folino implemented a policy of preventing Islamic inmates from rolling up their pants without providing notice and an opportunity to be heard prior to enactment of the policy. As explained above, Plaintiff could request an exemption to the policy which would permit the wearing of the pants leg above the ankle by hemming the pants legs, which adequately addresses Plaintiff's claims regarding his First Amendment rights, his RLUIPA rights and does not violate Equal Protection given that there is a legitimate basis for not permitting the rolling up of the pants legs. As for a notice and opportunity to be heard prior to the enactment of the policy, Plaintiff was not entitled to such notice.

Due process is applicable to adjudicative kinds of acts and not to legislative policy making type acts, such as the enactment of statutes or policies by administrators. See Marshall v. Sawyer, 365 F.2d 105, 111 (9th Cir. 1966), *cert. denied*, 385 U.S. 1006 (1967). In Marshall, the court explained that

> [p]rocedural due process requires that when, as a premise for administrative [i.e., adjudicative] action, an agency of government makes a determination of adjudicative facts, one who has a sufficient interest or right at stake shall be afforded an evidentiary hearing before the agency.... "Adjudicative facts are facts about parties and their activities, businesses, and properties, usually answering the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case...."

Id. (*quoting*, Kenneth Culp Davis, The Requirement of a Trial-Type Hearing, 70 Harv.L.Rev. 193, 199 (1956)). *See also* County Line Joint Venture v. City of Grand Prairie, Texas, 839 F.2d 1142, 1144 (5th Cir. 1988), *cert. denied*, 488 U.S. 890 (1988) ("Generally, if the court views the governmental conduct as legislative, the property owner has no procedural due process rights."); Provost v. Betit, 326 F. Supp. 920, 923 (D. Vermont 1971) (distinguishing between legislative action and judicial action whereas judicial action constitutionally requires procedural due

process, legislative action does not). *See* <u>Traweek v. City and County of San Francisco</u>, 659 F. Supp. 1012, 1029 (N.D. Cal. 1984) ("the Due Process Clause does not grant to members of the public generally a right to be heard by legislative or administrative bodies making decisions of policy."), *affirmed in part and vacated in part*, 920 F.2d 589 (9th Cir. 1990). Thus, Plaintiff's premise that he was entitled to some form of notice of the Defendant Folino's enacting the policy concerning the rolling up of pants legs and an opportunity to be heard prior to the enactment of the policy is simply wrong as a matter of law.

Accordingly, Paragraphs 132 – 133 of the Complaint are dismissed for failure to state a claim.

### 3. Calculation of Ramadan Claim.

In his third claim, Plaintiff complains about the way in which the DOC authorities determine when Ramadan occurs. He complains that the DOC authorities determine the beginning and ending of Ramadan based on an "Islamic calendars [sic] estimate date without first observing the physical sighting of the Hilaal [i.e., the crescent moon] . . . and prohibiting Plaintiff and other o[r]thodox Sunni Muslim inmates from observing a physical sighting of the Hilaal[.]" ECF No. 1 ¶ 134. Somewhat contradictorily, Plaintiff complains that "on July 20, 2012, an unknown correctional officer announced over the prison intercom that the moon has been sighted and Rama<u>dh</u>an has begun. That under the tenets of Islam and the Sunnah of Prophet Muhammad . . . this statement that was announced over the prison intercom by this unknown individual was invalid due to the fact that this individual was 1. Unknown; 2. not Muslim." ECF No. 1 ¶ 94. If the individual was unknown, Plaintiff fails to explain how he knows the individual was not Muslim.

There is apparently a dispute amongst various sects of Muslims as to the way to determine when Ramadan begins and ends as Plaintiff's exhibits indicate, ECF No. 1-1 at 61 – 67.

Although not entirely clear, it appears that Plaintiff alleges that his religious rights were violated on July 20, 2012 when someone announced the beginning of Ramadan over the prison intercom but that Ramadan did not truly begin until July 22, 2012, which should have marked the first day of fasting for Plaintiff. Plaintiff complains that "because of the fast statement [announcing Ramadan as beginning on July 20, 2012] . . . , Plaintiff could not attend regular meals because as a Muslim, Plaintiff was on the Ramadhan list, and as such was not allowed in the prison chow hall during daylight hours; thus, Plaintiff had to forfeit the mandated 2800 calories and nutrition that Plaintiff would have receive[d] in the normally functioning feeding line." ECF No. 1 ¶ 97.

Plaintiff again alleges that his rights were somehow violated on August 18, 2012, when an unknown correctional officer announced over the prison intercom that the crescent moon had been sighted and that Ramadan was ended. Plaintiff complains that the statement was invalid and Ramadan was still ongoing until August 20, 2012 which was the official ending of Ramadan as "as the party injured [i.e., Plaintiff] physically sighted the Hilaal to end Ramadhan." ECF No. 1 ¶ 98.

Plaintiff then goes on to explain that it was not until September 23, 2012 that Plaintiff submitted an Informal Resolution request to Defendant Sibanda, the prison chaplain and not until October 8, 2012 that Plaintiff submitted a grievance regarding "the ongoing and continuous practice of beginning and ending Ramadhan absent a physical sighting of the Hilaal." Id. ¶ 103.

It is clear from the allegations in the Complaint that even though Plaintiff's rights were allegedly violated on July 20, 2012 to July 22, 2012 and again from August 18, 2012 to August 20, 2012, Plaintiff did not make Defendants aware of his religious requirements until after his rights were allegedly violated. This is insufficient to hold them liable and causes him to fail to state a claim upon which relief can be granted because there is nothing alleged in the Complaint that shows the Defendants caused any violation of Plaintiff's religious rights because there is nothing in the Complaint that alleges prior to the violation, the Defendants were even aware of Plaintiff's religious objections to their practices regarding Ramadan or that Plaintiff made any request for a religious accommodation for his particular interpretation of when Ramadan begins and ends, without such knowledge, it cannot be said that the Defendants caused any violation of Plaintiff's rights.

Regarding Section 1983 actions, such as the one Plaintiff is attempting to bring for the alleged violation of his First Amendment rights, in order to:

> make out a claim under Section 1983, a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution and laws of the United States. The plaintiff must also establish that it was the acts of the defendant which caused the constitutional deprivation.

Caldwell v. Beard, No. 2:07–cv–727, 2008 WL 2887810 at *5 (W.D. Pa. July 23, 2008), *aff'd* 324 F. App'x 186 (3d Cir. 2009) (quoting Mosley v. Yaletsko, 275 F.Supp.2d 608, 613 (E.D. Pa.2003)). Similarly, causation is a required element for Plaintiff to state a claim upon which relief can be granted for the statutory tort of RLUIPA. See, e.g., Hendrix v. Sterilite Corp.,742 F.Supp.2d 1277, 1284 (N.D. Ala., 2010) ("Proximate cause is, of course, an essential element of a statutory tort"). Cf. Lovelace v. Lee, 472 F.3d 174, 194 (4th Cir. 2006) ("Although RLUIPA itself contains no state-of-mind standard, a fault requirement consistent with Congress's purpose

must be incorporated from customary tort principles. Of course, tort law's spectrum of fault ranges from negligence to intentionality. We conclude that simple negligence, the 'lowest common denominator of customary tort liability,' does not suffice to meet the fault requirement under section 3 of RLUIPA. Adoption of the negligence standard would open prison officials to unprecedented liability for burdening an inmate's religious exercise.") (citations omitted).

Because Plaintiff fails to allege any knowledge on the part of the Defendants regarding his different Islamic religious views concerning the starting and ending of Ramadan, prior to the alleged violations of his rights, Plaintiff simply fails to state claim upon which relief can be granted. Accordingly, Plaintiff's claims contained in Paragraphs 134 and 135 of the Complaint are dismissed for failure to state a claim upon which relief can be granted. See, e.g., Huertas v. Sobina, Civ. A. No. 09–139 Erie, 2010 WL 3304263, at *4 (W.D. Pa., July 14, 2010) ("Even accepting Plaintiff's allegations to be true, they are insufficient to render Defendants Sobina and Varner liable, as knowledge after the fact and any actions or inactions taken after Defendant Henry's alleged misconduct cannot be said to be the 'cause' of a First Amendment violation."); Troublefield v. City of Harrisburg, Bureau of Police, 789 F.Supp. 160, 166 (M.D. Pa. 1992)("*Brower v. Inyo County*, 489 U.S. 593 (1989) . . . requires that some nature of volitional act on the part of the state actor must cause the harm to plaintiff for a fourth amendment excessive force claim to sound."), *aff'd*, 980 F.2d 724 (3d Cir. 1992) (TABLE). Accord Ricker v. Weston, 27 F. App'x 113, 119 (3d Cir. 2002) ("This decision not to discipline the officers does not amount to active involvement in appellees' injuries given that all of the injuries occurred before the decision."); Moor v. Madison County Sheriff's Dept., 30 F. App'x 417, 420 (6th Cir. 2002)("Timing is everything. Cochran did not learn any of these facts until Moor filed her complaint. Specifically, Cochran first learned of the incident on May 27, 1999, when he received

a letter from Moor's attorney along with a courtesy copy of the Complaint. After receiving the complaint, Cochran investigated the incident by questioning Arthur, who denied any wrongdoing, and he reviewed the 911 calls for assistance from the Shell station. . . .In fact, Moor's facts reveal that Cochran did not know of the incident [at the time of its occurrence] and therefore could not have implicitly acquiesced in it."); Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 478 (7th Cir. 1997) ("Chief Robertson could not have undertaken any action to 'un-do' any alleged constitutional violation by Sergeant Krane.").

Accordingly, Plaintiff's legal claims in Paragraphs 134 – 135 of the Complaint and the corresponding factual allegations in support thereof fails to state a claim upon which relief can be granted and should be dismissed.

### 4. Termination of Thompson-West Contract.

In his fourth claim, Plaintiff complains about the DOC terminating a contract with Thompson-West, a legal publishing company, which results in prisoners having no access to the Advance Sheets of court opinions. Plaintiff complains that he may miss the 60 day deadline for filing a new PCRA petition because he will not have access to new decisional law within that time without the Advance Sheets.

As to Plaintiff's claims that such actions creates a risk of prejudice and violates the Due Process, Equal Protection and denies him access to courts under the First Amendment. Plaintiff has no liberty or property interest in the maintenance of the contract as it existed and so due process is not violated. See Sandin v. Conner, 515 U.S. 472 (1995). All prisoners are being treated equally, they no longer have access to the Advance Sheets. As to denial of access to courts, Plaintiff's claim is at best speculative. It assumes that there will be a Court decision in the future, which has legal significance to his conviction, which was or will be made

retroactively applicable to convictions that have become final, such as his conviction, and that he will not learn about such decision within 60 days after the decision or after the decision has been made retroactively applicable and that no state court would permit him to file a successive PCRA petition after the 60 day time limit. This is simply too many "ifs" to raise this alleged denial of access to courts claim to anything more than speculative within the contemplation of <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."). Accordingly, the claim in Paragraph 136 of the Complaint is dismissed for failure to state a claim upon which relief can be granted.

### 5. Policy on Asking Permission to Speak.

Plaintiff next complains of an alleged unauthorized policy enacted by his Unit Officials which requires inmates to ask permission of the Unit Officials in order to speak to other DOC employees who come onto the unit prior to speaking with those DOC employees. Plaintiff claims this is a violation of his right to freedom of speech. However, this policy or rule is clearly a time, manner, or place restriction and does not violate the First Amendment as a matter of law. <u>Cf</u>. <u>Hendrickson v. McCreanor</u>, 199 F. App'x 95 (3d Cir. 2006) (upholding a policy that prohibited talking by inmates during meals in a dining hall and applying the <u>Turner</u> test and concluding that the policy did not violate the inmates' First or Eighth Amendment rights); <u>Smiley v. Stevenson</u>, C/A No. 0:09–2039, 2010 WL 2902778 (D.S.C., April 30, 2010)(finding a total ban on talking in the cafeteria to not violate the First Amendment); <u>Duncan v. Quarterman</u>, C/A No. 2:09–0187, 2009 WL 2614395 (N.D. Tex. Aug. 26, 2009) (unpublished) (holding that a no-talking policy in certain parts of the prison did not violate a prisoner's First Amendment rights).

Moreover, Plaintiff does not allege that he sought permission and was denied such permission. Rather he only alleges that he was given false and negative remarks on his quarters

card, ECF No. 1 ¶ 118 and a recommendation that he be removed from his inmate job because he was abusing the position by roaming throughout the unit talking with non-unit staff without first asking permission. Plaintiff admits that he addressed non-unit staff without first asking permission in violation of the policy; that he was made to suffer such negative entries is not retaliation given that there is a legitimate penological interest, i.e., punishing Plaintiff for not obeying a rule/policy of the unit staff even if Plaintiff contends such policy is not authorized.

Hence, Plaintiff's claims in Paragraphs 136 and 137 of the Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## III. CONCLUSION

Accordingly, for the foregoing reasons, the instant Complaint should be dismissed for failure to state a claim upon which relief can be granted and for repetitiousness.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Date: December 11, 2015

/s/Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:    Honorable Nora Barry Fischer
United States District Judge

Nathan Riley
CT-8571
SCI Camp Hill (SMU)
PO Box 200
Camp Hill, PA 17001-0200